LIBERTY INSURANCE
CORPORATION,
Appellant,

v.

Blanca CAMERO, Appellee.

No. 05–10–00740–CV.

Court of Appeals of Texas,
Dallas.

Dec. 12, 2011.

David L. Plaut, Catherine L. Hanna, Eric Scott Peabody, Hanna & Plaut, L.L.P., Austin, TX, for Appellant.

Michael P. Doyle, Jeffrey L. Raizner, Doyle Raizner, LLP, Alan Brandt Daughtry, Houston, TX, for Appellee.

Before Justices FITZGERALD,[1] FRANCIS, and LANG–MIERS.

## OPINION

Opinion By Justice LANG–MIERS.

Blanca Camero sued Liberty Insurance Corporation for wrongful handling of her workers' compensation claim. A jury found that Liberty breached its common law duty of good faith and fair dealing, but did not do so knowingly, and that Liberty engaged in unfair or deceptive acts or practices under the Texas Insurance Code, but did not do so with malice or in an unconscionable manner. The jury awarded damages to Camero for past loss of earning capacity, past pain and suffering, and past physical impairment in the amount of $21,990 plus attorney's fees. Camero elected to recover damages under the insurance code, and the trial court

rendered judgment on the insurance code claim in accordance with the jury's verdict. We conclude that the trial court did not have jurisdiction to render judgment on the damages awarded by the jury. But even if the trial court had jurisdiction, we further conclude that Camero did not present evidence of a claim separate from her workers' compensation claim that produced an independent injury. We reverse the trial court's judgment and render judgment that Camero take nothing by her claims against Liberty.

## BACKGROUND

We recite the following facts from Liberty's appellate brief, which Camero does not dispute. Liberty is the workers' compensation insurance carrier for Camero's employer. Camero reported an on-the-job knee injury to her employer, who in turn reported the incident to Liberty. Liberty investigated Camero's claim and learned through co-workers that Camero may have reported an injury in retaliation for her employer's denial of a vacation request. Camero did not respond to Liberty's attempts to contact her about the incident. As a result of its investigation, Liberty concluded that Camero had not been injured on the job and denied Camero's claim for compensation benefits. Camero did not appeal Liberty's decision to deny compensation benefits.

Liberty also investigated the medical evidence of Camero's alleged injury. The investigation revealed that Camero consulted three different medical providers during the first two weeks after she reported the injury. The first doctor diagnosed Camero with a knee strain and ordered diagnostic testing when Camero's condition did not improve. Camero can-

---

1. Justice FitzGerald did not participate in oral argument, but participated in the resolution of this appeal. Chief Justice Wright participated in oral argument, but did not participate in the resolution of the appeal.

celled the test and consulted a chiropractor instead. The chiropractor diagnosed Camero with "acute traumatic left knee internal derangement" and "acute traumatic left knee lateral meniscus tear/ACL tear probable" and also ordered diagnostic testing. The test showed no significant abnormal findings. Although the chiropractor concluded that Camero's knee was "essentially normal," the chiropractor referred Camero to an orthopedic surgeon.

The orthopedic surgeon examined Camero, recommended arthroscopic surgery, and submitted a request to preauthorize surgery to Liberty. Liberty submitted the request for a peer review and, based on the review, denied the request on the ground that the surgery was not medically necessary. Camero did not appeal Liberty's decision.

Liberty filed a "Notice of Denial of Compensability and Refusal to Pay Benefits." The notice advised Camero of her right to request a benefit review conference, which she did. When she and Liberty were unable to reach an agreement to resolve the dispute at the conference, the matter was set for a contested case hearing. The hearing officer issued a Decision and Order in which it found that Camero suffered a compensable injury and that she had been unable to work for a period of time. The Decision and Order required Liberty to pay benefits in accordance with the decision. However, the Decision and Order did not address whether surgery was medically necessary when the preauthorization request was first submitted or Liberty's decision to deny medical benefits. Liberty did not appeal the ruling and immediately paid compensation benefits to Camero.

Camero's surgeon made a second request to preauthorize surgery, and Liberty approved it. After the surgery, Camero sued Liberty alleging that Liberty, among other things, failed to properly investigate her injury and denied benefits without a reasonable basis. She sought damages for "severe economic distress and delayed medical treatment," including damages for "significant economic impact, worry, distress, and continuing economic and physical damage." Liberty moved for summary judgment, which the trial court denied, and a jury trial followed.

The trial court submitted two liability questions to the jury—one on the duty of good faith and fair dealing and one on unfair or deceptive acts or practices under the insurance code. The jury found against Liberty on both questions. The jury awarded damages for injuries Camero suffered in the past: past loss of earning capacity, past physical pain and suffering, and past physical impairment. The jury found zero damages for future loss of earning capacity, future physical pain and suffering, future physical impairment, and past and future damages to credit reputation. The jury also awarded attorney's fees.

Liberty initially argues on appeal that the trial court did not have jurisdiction to render judgment in favor of Camero. It also contends, among other things, that there is no evidence of a claim separate from the workers' compensation claim that produced an independent injury upon which the jury could have awarded damages. Camero cross-appeals on the issue of attorney's fees.

**JURISDICTION**

In issue one, Liberty challenges the trial court's jurisdiction to render judgment because Camero did not exhaust her administrative remedies. The parties agree that the Texas Workers' Compensation Act gave the Workers' Compensation Division exclusive jurisdiction over the dispute in this case. Generally, when an

agency has exclusive jurisdiction over a dispute, a party is required to exhaust all administrative remedies before seeking judicial review. *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex.2002). And until a party exhausts all administrative remedies, a trial court lacks subject matter jurisdiction to consider the merits of a dispute. *Id.* at 221–22. Whether a trial court has subject matter jurisdiction is a question of law which we review de novo. *Id.* at 222.

Liberty argues that the damages the jury awarded here were for injuries allegedly resulting from delayed surgery and were dependent on the determination that Camero was entitled to surgery when preauthorization was first requested.[2] Liberty contends that Camero was required to but did not exhaust all administrative remedies regarding Liberty's denial that the surgery was medically necessary, and, because she did not, the trial court did not have jurisdiction to render judgment awarding damages resulting from delayed surgery. To support its argument, Liberty cites *Cunningham Lindsey Claims Management, Inc. v. Snyder*, 291 S.W.3d 472 (Tex.App.-Houston [14th Dist.] 2009, pet. denied).

In the *Snyder* case, the court of appeals faced a similar question about exhaustion of remedies that we face here. The insurer in that case denied Lloyd Snyder's first request to preauthorize surgery because it concluded the surgery was not medically necessary. *Id.* at 475. The parties had a contested case hearing and the hearing officer ruled in favor of Snyder. *Id.* A second request to preauthorize surgery was made over two months later, and the insurer approved the request. *Id.* Snyder then sued the insurer for damages resulting from the delayed surgery. *Id.* at 475–76. The jury found in favor of Snyder, and the trial court rendered judgment in favor of Snyder under the insurance code. *Id.* at 476. On appeal, the court concluded that the trial court did not have jurisdiction to award damages resulting from delayed surgery because Snyder did not appeal the insurer's initial decision that surgery was not medically necessary. *See id.* at 478–79, 486. The court concluded that Snyder's claim for damages depended "on the determination that he was entitled to preauthorization of the [first request for] surgery" *Id.* at 478. The court said, "Because preauthorization was denied on the asserted basis of lack of medical necessity, Snyder's only recourse was to obtain a ruling on medical necessity from the [Workers' Compensation Division] by following the procedure set forth in the Texas Administrative Code for challenging the denial." *Id.* at 478–79. Snyder argued that he was not required to exhaust his administrative remedies because there was no dispute pending at the time he filed the lawsuit. *Id.* at 482–83. But the court stated that the reason there was no dispute pending at the time Snyder filed the lawsuit was because Snyder did not challenge the insurer's decision about medical necessity through the appropriate administrative procedure. *Id.* at 483 (citing *Am. Motorists Ins. Co. v. Fodge*, 63 S.W.3d 801, 804 (Tex.2001)). The court stated that whether Snyder was damaged by a wrongful delay in surgery could be answered only by first determining that the insurer wrongfully decided that surgery was not medically necessary. *Id.* at 483–84. But because Snyder did not timely challenge the insurer's decision about medical necessity, that decision was final, and the trial court lacked jurisdiction of the lawsuit. *Id.* at 483–84, 486.

---

**2.** As we have stated, the damages awarded were for past loss of earning capacity, past physical pain and suffering, and past physical impairment.

Camera argues, as did the claimant in the *Snyder* case, that there was no dispute with Liberty over benefits because, before she filed this lawsuit, the hearing officer ultimately determined that her injury was compensable, Liberty did not appeal that decision, and Liberty approved a second request to preauthorize surgery. To support her contention, she cites *Texas Mutual Insurance Co. v. Ruttiger*, 265 S.W.3d 651 (Tex.App.-Houston [1st Dist.] 2008), *rev'd on other grounds*, —— S.W.3d ——, 2011 WL 3796353 (Tex.2011).

In the *Ruttiger* case, Timothy Ruttiger and the workers' compensation insurer disagreed about whether an injury was compensable. *Id.* at 655. The parties attended a benefit review conference and executed an agreement resolving their dispute and stating that Ruttiger had sustained a compensable injury. *Id.* Ruttiger then sued the insurer for damages for delayed compensation and surgery. *Id.* at 655–56. The jury found in favor of Ruttiger on all issues, and the trial court rendered judgment under the insurance code based on the jury's findings. *Id.* at 656. On appeal, the insurer argued that the trial court did not have jurisdiction because Ruttiger did not exhaust his administrative remedies. *Id.* It contended that the benefits agreement it executed with Ruttiger, even though it was approved by the Workers' Compensation Division, did not constitute a determination by the Division that benefits were due. *Id.* The court of appeals disagreed. *Id.* at 657–58. It stated that the agreement between Ruttiger and the insurer "constituted a final determination that benefits were due to Ruttiger and that the trial court had subject matter jurisdiction to hear Ruttiger's case." *Id.*

The Supreme Court of Texas granted the insurer's petition for review in the *Ruttiger* case and issued its opinion after the parties here had briefed the issues on appeal. *See Tex. Mut. Ins. Co. v. Ruttiger*, —— S.W.3d ——, ——, 2011 WL 3796353 (Tex.2011). It agreed that Ruttiger was not required to proceed through the administrative process after he and the insurer reached an agreement concerning benefits:

> If a dispute exists or arises between the parties, then resolution must first be sought from the [Workers' Compensation Division]. But the [Workers' Compensation] Act does not require a claimant to seek review of issues not in dispute. Nor would it make sense for courts to impose such a requirement, even if the claimant could convince the [Workers' Compensation Division] to set a hearing when there was no disputed issue. We conclude that as to the claims underlying his suit, Ruttiger exhausted his administrative remedies and the trial court had jurisdiction over his suit.

*Id.* at ——.

Liberty distinguishes the *Ruttiger* case because, there, the parties agreed to resolve their dispute over benefits and, as a result, there was no dispute pending when Ruttiger filed the lawsuit alleging wrongful claims handling. Liberty argues that here, however, the parties did not agree to resolve their dispute over benefits. And although the hearing officer determined Camero's compensability dispute in her favor, Camero never sought a review of Liberty's initial decision to deny surgery on the asserted ground that the surgery was not medically necessary. Liberty contends that its subsequent approval of the second request to preauthorize surgery (approximately seven months after the first request) did not mean that its decision to deny the first request was wrong at the time that decision was made. Consequently, Liberty contends, at the time

Camero filed this lawsuit, its initial decision to deny surgery on the ground it was not medically necessary had never been challenged through the appropriate administrative procedure and the trial court lacked jurisdiction to hear her claim for damages resulting from delayed surgery. We agree.

The Workers' Compensation Division has exclusive jurisdiction to determine whether a claimant is entitled to a particular benefit. *Ruttiger*, —— S.W.3d at —— (citing *Fodge*, 63 S.W.3d at 804). And, "just as a trial court could not award medical benefits, neither could it award damages for a denial of payment of benefits without a determination that the benefits were due." *Id.* (citing *Fodge*, 63 S.W.3d at 804). Like the claimant in the *Snyder* case, Camero did not exhaust her administrative remedies concerning Liberty's initial decision that the surgery was not medically necessary. *See Snyder*, 291 S.W.3d at 482–84. As in that case, Liberty's initial decision concerning medical necessity is now final. *See id.* at 484. Because there has been no determination by the Workers' Compensation Division that surgery was medically necessary when the first request for preauthorization was made, the trial court is without jurisdiction to award damages allegedly resulting from delayed surgery. *See Ruttiger,* —— S.W.3d at ——; *Snyder*, 291 S.W.3d at 482–84.

We resolve issue one in appellants' favor and conclude that the trial court did not have jurisdiction to render the judgment in this case. But even if the trial court had jurisdiction, we nevertheless conclude that the judgment must be reversed based on our resolution of appellants' second issue, to which we now turn.

### SUFFICIENCY OF THE EVIDENCE

■ In issue two, Liberty challenges the sufficiency of the evidence to support the jury's damages awards. We conclude that Camero did not present any evidence of and the jury did not award any damages for a claim separate from the workers' compensation claim that produced an independent injury.

■ To evaluate the legal sufficiency of the evidence to support a jury finding, we must "determine whether the proffered evidence as a whole rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 25 (Tex.1994). We view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 807 (Tex.2005).

■ We have stated that a compensable injury in the workers' compensation context "extends to what has been labeled an 'extension injury,' which includes 'an injury occurring in the probable sequence of events and arising from the actual compensable injury.'" *Hulshouser v. Tex. Workers' Comp. Ins. Fund,* 139 S.W.3d 789, 792 (Tex.App.-Dallas 2004, no pet.). Generally, to recover damages, the claimant must show an injury "separate from the compensation claim" that produced "an independent injury." *See id.* at 793 (quoting *Aranda v. Ins. Co. of N. Am.,* 748 S.W.2d 210, 214 (Tex.1988)).

The record in this case shows that the damages Camero sought were related to a worsening of her knee injury, including permanent damage to her knee and additional pain. She presented evidence that Liberty's denial of the first request to preauthorize surgery resulted in a seven-month delay in treatment and evidence that the delay "caused her additional pain

and worsening of her condition." She argued that "[t]he need for surgery was 'urgent,' and that the delay caused permanent damage as well as additional pain." Although Camero sought damages for economic injury to her credit reputation, the jury found zero damages for that alleged injury. Having reviewed the record, we conclude that there is no evidence that Camero suffered any damages resulting from a claim separate from her workers' compensation claim that produced an independent injury.[3]

We resolve issue two in appellant's favor. Because of our resolution of issues one and two, we do not need to reach issues three and four, and appellee's issue on cross-appeal is moot.

### Conclusion

We reverse the trial court's judgment and render a take-nothing judgment against Camero.

---

**3.** We also recognize that in the *Ruttiger* case, the supreme court held for the first time that "claims against workers' compensation insurers for unfair settlement practices may not be made under the Insurance Code...." *Ruttiger,* —— S.W.3d at ——. After that decision was issued, Liberty moved this Court for leave to amend its issues on appeal to argue that the trial court erred by submitting the insurance code charge to the jury. We denied the motion for leave to amend the issues, but granted the motion to allow supplemental briefing addressing the *Ruttiger* decision.

In this case, Camera elected to recover under the insurance code, and the trial court rendered judgment solely on the jury's findings on the insurance code claim. Consequently, appellants argue in supplemental briefing that the *Ruttiger* opinion would require us to reverse the trial court's judgment and render judgment that Camera take nothing by her claims. In oral argument, Camera argued that Liberty did not preserve this issue for our review, but, even if it did, the jury had two other theories upon which to award damages. Nevertheless, and based on our analysis of Liberty's second issue, we conclude that we must reverse the trial court's judgment.